**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| ANDREW THOMASSON,<br>Plaintiff,<br>*vs.*<br>ELLIS COUNTY TREE SERVICE LLC d/b/a ALWAYS GREEN TREE SERVICE; CASH ANTHONY SPENCER; and DOES 1-10,<br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 5:26-cv-07352 |

**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, TEXAS TELEMARKETING AND TELEPHONE SOLICITATION STATUTES, AND TEXAS DECEPTIVE TRADE PRACTICES ACT**

Plaintiff, Andrew Thomasson, by way of this Complaint against Defendants, Ellis County Tree Service LLC d/b/a Always Green Tree Service ("AGTS"); Cash Anthony Spencer ("Spencer") and DOES 1-10 (collectively, "Defendants"), states:

## I. NATURE OF THE ACTION

1. Plaintiff's Complaint seeks redress from Defendants, who knowingly and willfully sent him unwanted telemarketing text messages, and called him, in violation of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, *et seq.*, the Federal Communications Commission's implementing regulations, 47 C.F.R. § 64.1200, Tex. Bus. & Com. Code (TBCC) §§ 302.101 and 305.053, and the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA), Tex. Bus. & Com. Code § 17.41, *et seq.*

2. The Defendants operate a tree-trimming business. They market their services by sending text messages, and placing calls, to Texas residents who, like Plaintiff, listed their telephone numbers on the National Do Not Call Registry to tell

solicitors their calls and texts are unwelcome.

***A. The TCPA.***

3. In 1991, Congress enacted the TCPA to regulate explosive growth in the telemarketing industry because Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy[,]" and determined federal legislation was needed because "telemarketers [could] evade [state-law] prohibitions through interstate operations.'" *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (citations omitted).

4. The TCPA requires the Federal Communications Commission ("FCC") to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). It also instructs the FCC to:

> compare and evaluate alternative methods and procedures (including the use of … company-specific do not call systems …)" and "develop proposed regulations to implement the methods and procedures that the Commission determines are most effective and efficient to accomplish purposes of this section.

*Id*. at § 227(c)(1)(A), (E). The FCC complied by establishing company-specific "do not call" rules. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992) ("TCPA Implementation Order").

5. The FCC found "the company-specific do-not-call list alternative is the most effective and efficient means to permit telephone subscribers to avoid unwanted telephone solicitations." *Id*. at 8765, ¶ 23. However, the FCC recognized an honor system would likely be ineffective and, thus, determined it "must mandate procedures for establishing company-specific do-not-call lists to ensure effective compliance with and enforcement of the requirements for protecting consumer privacy." *Id*. at ¶ 24.

6. These regulations, codified at 47 CFR 64.1200(d)(1)-(7), require companies to keep a written policy for maintaining a do-not-call list, train telemarketing personnel on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1)-(3), (6). These policies and procedures prohibit companies from making telemarketing calls unless they have implemented these policies and procedures. *Id*.

7. "Text messages are 'calls' subject to the TCPA, as previously determined by the Commission." *In re Rules and Reguls. Implementing the TCPA of 1991*, 30 FCC Rcd. 7961, 7965, (FCC July 10, 2015). And a private right of action exists to enforce the TCPA under 47 C.F.R. § 64.1200(d). 47 U.S.C. § 227(c)(5).

> [S]ection 227(c)(5)… empowers 'any person' to sue for damages and injunctive relief for do-not-call violations 'by or on behalf of' a company. In accordance with this statutory provision, the Commission's company specific do-not-call rules provide that '[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity[.]' 47 C.F.R. § 64.1200(d).

*In re Dish Network*, 28 FCC. Rcd. 6574, ¶ 29 (2013).

8. Additionally, a text message that exceeds 160 characters is not transmitted as a single message. Under the GSM-7 character-encoding standard governing SMS transmissions, such a message is transmitted as multiple concatenated SMS segments of up to 153 characters each, and each segment is separately transmitted to, and delivered on, a recipient's device, even if the recipient's device reassembles and displays the segments as one continuous message. Each segment constitutes a separate "call" and a separate "text message" for TCPA purposes. *See, e.g., Connor v. Servicequick, Inc.*, No. 1:24-

cv-02286-CNS-NRN, 2025 U.S. Dist. LEXIS 199578, at *2–*4 (D. Colo. Oct. 8, 2025) (denying motion to dismiss § 227(c)(5) claim where plaintiff alleged a text message exceeding 160 characters was transmitted as multiple concatenated SMS segments and thereby constituted more than one "text message" received within a 12-month period).

9. These requirements are separate but cumulative, which means companies must comply with *both* procedures—namely, company-specific do not call list *and* national "do not call" database regulations (discussed *infra*). Failure to comply with either is a distinct violation of 47 U.S.C. § 227(c). Some requirements mention "residential" telephones, but cellular telephones are also considered "residential." 47 CFR § 64.1200(e).

10. Further, a person or entity is liable under the TCPA for violative calls and texts made on its behalf even if they did not directly dial the calls. *In re Rules & Regs. Implementing the TCPA*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995) (explaining the FCC's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any [TCPA] violations"). In fact, in May 2013, the FCC issued a binding declaratory ruling clarifying that sellers "may be held vicariously liable under federal common law principles of agency for TCPA violations committed by third-party telemarketers . . . under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the Telephone Consumer Protection Act Rules*, 28 FCC Rcd. at 6574 ¶28.

11. Courts can impose TCPA liability against persons for prohibited calls made on their behalf under several theories including vicarious liability. *Johnson v. Palmer Admin. Servs.*, No. 6:22-cv-00121, 2022 U.S. Dist. LEXIS 206601 (E.D. Tex. Nov. 14, 2022).

***B. National Do Not Call Registry.***

12. The National Do Not Call Registry ("Registry") allows consumers to register their telephone numbers, indicating their desire to not receive solicitations; the registration "must be honored indefinitely, or until it is cancelled by the consumer or the telephone number is removed by the database administrator." 47 C.F.R. § 64.1200(c)(2).

13. The TCPA and implementing regulations forbid initiating telephone solicitations[1] to residential telephone subscribers whose numbers are on the Registry; it provides a private right of action against any entity initiating such calls, or any entity "on whose behalf" such calls are initiated. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

***C. Texas Business & Commerce Code.***

14. In Texas, a person who receives a communication that violates the TCPA may sue the originator under TBCC § 305.053, and a seller may not make telephone solicitations to a Texas purchaser without a registration certificate. Tex. Bus. & Com. Code §§ 302.101(a), 305.053(a).

15. A violation of Chapter 302 or Chapter 305 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17," and "[a] public or private

[1] The national Registry and company-specific do-not-call lists are triggered by different regulatory concepts. A "telephone solicitation" is a call/message initiated "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services," but the term does not encompass calls to persons with whom the caller has an "established business relationship." 47 C.F.R. § 64.1200(f)(15). Established business relationships form by "voluntary two-way communication," 47 C.F.R. § 64.1200(f)(5), and can be terminated the same way—by asking the caller to stop, 47 C.F.R. § 64.1200(f)(5)(i). "Telemarketing," by contrast, includes calls made for the purpose of encouraging purchase or rental of, or investment in, property, goods, or services, regardless of any consent or established business relationship. 47 C.F.R. § 64.1200(f)(13). The practical consequence is that companies must maintain specific do-not-call procedures for all telemarketing calls regardless of relationship but need only comply with Registry provisions calling a person with whom it lacks an established business relationship.

right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce" either chapter. *Id.* §§ 302.303, 305.054.

16. Section 305.054 took effect September 1, 2025, and governs conduct occurring on or after that date. Acts 2025, 89th Leg., R.S., ch. 964 (S.B. 140), §§ 5–7. Every communication at issue here occurred in 2026.

17. The Legislature directed that Chapter 302 "be liberally construed and applied to promote its underlying purpose to protect persons and the public against false, misleading, or deceptive practices in the telephone solicitation business." Tex. Bus. & Com. Code § 302.003(a).

18. The Legislature also provided that a claimant's prior recoveries under Chapters 302 and 305 "may not limit recovery in a future legal proceeding in any manner." *Id.* §§ 302.003(b), 305.055.

19. The Texas legislature likewise enacted the DTPA after finding it was necessary to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection. Tex. Bus. & Com. Code § 17.44(a). Consequently, the Legislature expressly mandated that courts liberally construe and apply the DTPA to promote its underlying purposes. *Id.*

20. Texas "[c]ourts routinely award statutory damages under both the TCPA and TBCC based on the same unwanted telephone calls or texts." *Tatum v. RFG USA Inc.*, No. 6:25-cv-403-JDK-JDL, 2026 U.S. Dist. LEXIS 39386, at *4 (E.D. Tex. Feb. 26, 2026) (cite omitted) (collecting cases); see also, *Thomas v. Zenith Solar*, LLC, 2022 U.S. Dist. LEXIS 202851 (W.D. Tex. Aug. 1, 2022) (same); *Thompson v. Dealer Renewal Servs.*, 2021 U.S. Dist.

LEXIS 223424 (N.D. Tex. Nov. 18, 2021) (same).

21. Courts routinely award the full statutory penalty for each solicitation made without a registration certificate. *Tatum, supra* at *4–*5 (overruling Report & Recommendation awarding nominal-damages and instead awarded $5,000 for *each* of thirteen telephone solicitations ($65,000)); *Callier v. Cloud City Com. Capital, Ltd. Liab. Co.*, No. EP-25-CV-00408-KC, 2026 U.S. Dist. LEXIS 178236, *14 (W.D. Tex. Aug. 10, 2026).

22. TBCC § 302.101(a) prohibits a seller from making a telephone solicitation from a location in Texas, or to a purchaser located in Texas, unless the seller holds a registration certificate for the business location from which the solicitation is made. A seller who violates Chapter 302 "is subject to a civil penalty of not more than $5,000 for each violation." *Id.* § 302.302(a).

23. A person who receives a communication that violates the TCPA or its implementing regulations may recover an injunction and the greater of $500 for each violation or his actual damages. Tex. Bus. & Com. Code § 305.053(a)–(b). For a knowing or intentional violation, the court may increase the award to the greater of $1,500 for each violation or three times actual damages. *Id.* § 305.053(c).

24. A consumer who prevails under the DTPA may recover economic damages, an injunction, and court costs and reasonable and necessary attorneys' fees, and, for knowing conduct, mental-anguish damages and up to three times economic damages. *Id.* § 17.50(b), (d).

25. When another law grants the right to sue under the DTPA, the claimant "may recover any actual damages incurred by the claimant, without regard to whether the conduct of the defendant was committed intentionally," up to three times actual

damages. *Id.* § 17.50(h).

## II. PARTIES

26. Andrew Thomasson is a natural person.

27. Mr. Thomasson is a citizen of Texas who resides in the City of San Antonio, Bexar County, Texas, where he received each communication alleged in this Complaint.

28. AGTS is a for-profit limited liability company organized under Texas law, Texas Secretary of State Filing No. 804358675.

29. AGTS does business under the assumed name "Always Green Tree Service" and refers to itself in its text messages as "AGTS" and "AG Tree Service." [***Exhibit A***, Nos. 12, 20, 22.]

30. AGTS maintains its principal place of business at 15780 Custer Trail, City of Frisco, Collin County, Texas.

31. AGTS may be served with process through its Registered Agent, Cash Spencer, at 4411 South Congress Avenue, Apt. 3324, Austin, Texas 78745, or wherever it may be found.

32. Spencer is a natural person.

33. Spencer is a citizen of Texas who resides in the City of San Marcos, Hays County, Texas.

34. Spencer may be served with process at 1818 Old Ranch Road 12, San Marcos, Texas 78666, or wherever he may be found.

35. Spencer, who goes by "Cash," is AGTS's sole Managing Member and Director and its registered agent.

36. Spencer personally placed telemarketing calls to Mr. Thomasson and left voicemails identifying himself as "Cash with Always Green." [***Exhibit A***, Nos. 16, 19.]

37. DOES 1-10 are sued under fictitious names as their true names and capacities are yet unknown. Plaintiff will amend this complaint to insert the true names and capacities of DOES 1-10 once they are ascertained.

38. DOES 1-10 are natural persons and/or entities who personally created, instituted and, with knowledge such practices were contrary to law, acted consistent with, conspired, engaged in, and oversaw the violative policies and procedures used by Defendants and their businesses. DOES 1-10 personally control Defendants' fictitious businesses and engaged in the illegal acts, policies, and practices Defendants used and, thus, are personally liable for all wrongdoing alleged in this Complaint.

## III. JURISDICTION AND VENUE

39. This Court has federal-question jurisdiction over Plaintiff's TCPA claims under 28 U.S.C. § 1331. *Mims*, 565 U.S. at 386–87.

40. Supplemental jurisdiction for Plaintiff's state law claims exists under 28 U.S.C. § 1367.

41. This Court has personal jurisdiction over each Defendant. AGTS is organized under Texas law, and Spencer is domiciled in Texas.

42. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because every Defendant resides in Texas and Spencer resides in this District.

43. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here: Defendants directed their texts and calls to Mr. Thomasson in San Antonio, pitched services for his San

Antonio home, and he received every communication here.

## IV. FACTUAL ALLEGATIONS

44. Mr. Thomasson's telephone number, XXX-XXX-5180, is registered to a cellular telephone service, which he has retained and used for over two decades.

45. Mr. Thomasson does not have a residential telephone number other than his cellular phone number; he is its only user and he only uses it for residential purposes—*i.e.,* his personal, family, and household matters.

46. Mr. Thomasson's cellular telephone number is assigned to his carrier's family plan, registered in his name, and he pays for it using his personal bank account; it is the primary, if not exclusive, way he communicates with his friends and family.

47. Mr. Thomasson's cellular telephone number is unassociated with a business.

48. On February 21, 2012, Mr. Thomasson registered his cellular telephone number ending in 5180 on the FTC's Registry to obtain solitude from unwanted telemarketing calls and text messages.

49. AGTS sells tree-trimming and related landscaping services to Texas homeowners.

50. AGTS markets those services by sending text messages and placing telephone calls to consumers who never asked to hear from it, including consumers whose numbers are registered on the National Do Not Call Registry.

51. Between March 18, 2026, and September 11, 2026, Defendants sent Mr. Thomasson twenty-four text messages and placed two telephone calls to his cellular telephone number ending in 5180. A chronological compilation of those communications, together with Mr. Thomasson's replies, is attached as ***Exhibit A***.

52. Defendants used at least five telephone numbers: (866) 567-4896, a toll-free number; (779) 774-7993, a northern Illinois number; (832) 780-5085 and (832) 862-4503, Houston-area numbers; and (210) 329-3581, a San Antonio number. [***Exhibit A***.]

53. Before Defendants' first text message on March 18, 2026, Mr. Thomasson had never contacted AGTS, given AGTS his telephone number, or done business with AGTS.

54. Mr. Thomasson never published his cellular telephone number or provided it to Defendants.

55. Defendants obtained his name, his cellular number, and the street on which he lives from a source other than Mr. Thomasson.

56. Defendants' first message addressed Mr. Thomasson by name and referred to his street, Champion Trail, which is *not* in San Antonio's Dominion neighborhood. [***Exhibit A***, Nos. 1, 16.]

57. That first message, sent from the toll-free number at 1:05 p.m. on March 18, 2026, did not identify AGTS. It announced, "We're running a 'full property tree reset' for a neighbor on Champion Trl next Mon/Tue," offered "a special neighborhood price," and asked, "Would it be alright if I texted you the full details and price[?]" [***Exhibit A***, No. 1.] That statement was a lie.

58. Four hours later, Defendants texted again from the same number, again without identifying AGTS: "Im (sic) about to leave the office want me to send it over to you?" [***Exhibit A***, No. 2.]

59. Because neither message identified the sender, Mr. Thomasson replied one minute later, "Sure, email it to me," to learn who was soliciting him. [***Exhibit A***, R-1.]

60. That reply did not ask for telemarketing text messages or authorize Defendants to send any. Defendants never emailed Mr. Thomasson. Instead, they sent him eight more text messages over the next seventeen days. [***Exhibit A***, Nos. 3–10.]

61. Those messages pressed a $4,800 "ISA Standard Trim," warned that "I need to lock next week's route by tomorrow at 11am," and offered to make Mr. Thomasson's home a "Showcase House" with a "Showcase Front Yard Upgrade at no extra cost." [***Exhibit A***, Nos. 3–4.]

62. Defendants then offered a "full property makeover + tree health day" for "the same $4,800 neighborhood rate," and next claimed to be "cleaning up our schedule" while offering "one last shot before I close it out." [***Exhibit A***, Nos. 5–6.]

63. Defendants did not close anything out. On April 2, 2026, they re-sent their March 18 opening script word for word; on April 4, 2026, they re-sent their "about to leave the office" message word for word. [***Exhibit A***, Nos. 8–9; *compare id.*, Nos. 1–2.]

64. On April 6, 2026, Defendants texted: "trimming before the heat hits lets your trees put energy into roots instead of overgrowth . . . . We're near you next week - $4,800 and we handle everything. Want on the schedule?" [***Exhibit A***, No. 10.]

65. Mr. Thomasson replied, "Okay. Put me on your schedule," to obtain a written proposal that would identify the business soliciting him. [***Exhibit A***, R-2.]

66. Over the next two days, Defendants sent him seven more text messages from two numbers. [***Exhibit A***, Nos. 11–15, 17–18.]

67. Three of those messages came from the Illinois number and repeated the same form script—"Here is a written quote based on what we spoke about. To secure your booking, please review the quote and either click ACCEPT"—signed "Always

Green Tree Service," with a different quote link each time. [***Exhibit A***, Nos. 12, 14, 18.]

68. The toll-free number tied those quotes to itself. Less than a minute after the Illinois number sent the first quote link, the toll-free number texted, "I went ahead and sent the quote over to you. To confirm the spot, all you need to do is click ACCEPT." [***Exhibit A***, Nos. 12–13.]

69. On April 8, 2026, the toll-free number wrote that the quote "included tax, when we had previously agreed on $4800 only," and that it had "adjusted and resent it"; twenty-four seconds later, the Illinois number sent another copy of the same form quote. [***Exhibit A***, Nos. 17–18.]

70. Spencer also called Mr. Thomasson twice from the San Antonio number, at 4:30 p.m. on April 7, 2026, and at 3:09 p.m. on April 8, 2026. Each time, he left a voicemail. [***Exhibit A***, Nos. 16, 19.]

71. In the first voicemail, Spencer identified himself as "Cash with Always Greentree Service" and said, "We have you on the schedule for next week. We don't take any deposits for anything like that, but I do just need to have it marked as approved." [***Exhibit A***, No. 16.]

72. In the second voicemail, time-stamped 3:10 p.m., Spencer told Mr. Thomasson that "all we need from you is just a quote accepted." [***Exhibit A***, No. 19.]

73. Mr. Thomasson never accepted Defendants' quote, never signed any agreement with Defendants, and never purchased anything from them.

74. Defendants then went quiet for three months. On July 9, 2026—ninety-four days after Mr. Thomasson's April 6 reply—they started over from a new Houston-area number, (832) 780-5085, as though he were a stranger: "Hey Andrew, John w/ AG

Tree Service. We're on Champion Trl this week and saw your trees could use a trim. Want me to send you one?" [***Exhibit A***, No. 20.]

75. Four hours later, the same number followed up: "still out near Champion Trl this week - want me to send that free tree trim quote before we wrap up?" [***Exhibit A***, No. 21.]

76. Defendants repeated the same two-message script on August 10, 2026, from the same number, again four hours apart, and on September 11, 2026, from a fifth number, (832) 862-4503, four and one-half hours apart. [***Exhibit A***, Nos. 22–25.]

77. In July, August, and September alike, Defendants claimed to be "on Champion Trl this week." [***Exhibit A***, Nos. 20, 22, 24.]

78. After the two September 11 messages, Mr. Thomasson replied to the (832) 862-4503 sender, "Which address are you at and I'll stop by and get more information," to learn where the business operated. [***Exhibit A***, R-3.]

79. At 2:16 p.m. that day, Defendants texted from (832) 780-5085 with a new offer: the "ISA Standard Trim" with a "Neighborhood price is $2,599 all-in," and the same deadline, "I lock the route tomorrow at 11am." [***Exhibit A***, No. 26.]

80. Mr. Thomasson replied, "Send me an agreement so I can see what your terms are." [***Exhibit A***, R-4.] Defendants never sent one.

81. Defendants' "neighborhood price" for the same "ISA Standard Trim" thus fell from $4,800 in March and April to $2,599 in September. [*Compare* ***Exhibit A***, Nos. 3, 10, *with id.*, No. 26.]

82. Each of Mr. Thomasson's four replies came only after Defendants already solicited him and each answered a solicitation Defendants initiated. [***Exhibit A***, R-1 to R-4.]

83. None of those replies was a signed written agreement authorizing Defendants to send him telemarketing messages using an automatic telephone dialing system, and none followed any disclosure that he was not required to agree as a condition of purchase. *See* 47 C.F.R. § 64.1200(f)(9)(i).

84. Mr. Thomasson's replies sought to identify the seller, its location, and its terms; they did not invite Defendants to keep soliciting him by text message or telephone.

85. Defendants never had an "established business relationship" with Mr. Thomasson within the meaning of 47 C.F.R. § 64.1200(f)(5). He never purchased anything from Defendants or transacted business with them.

86. Even if a reply could be treated as an inquiry, any resulting relationship lasted no more than three months and expired before Defendants resumed texting on July 9, 2026. *Id.*

87. Nineteen of Defendants' twenty-four text messages did not identify AGTS, Always Green Tree Service, or any other seller by name. [***Exhibit A***, Nos. 1–11, 13, 15, 17, 21, 23–26.]

88. Defendants sent their text messages using an automatic telephone dialing system (ATDS).

89. The messages bear the marks of automated, scripted transmission. Defendants *(i)* sent identical messages word for word on different dates (***Exhibit A***, Nos. 1 and 8, 2 and 9); *(ii)* sent the same form quote three times from the Illinois number, changing only the link (*id.*, Nos. 12, 14, 18); and *(iii)* repeated the same two-message sequence in July, August, and September, each time sending the follow-up about four hours after the opener (*id.*, Nos. 20–25).

90. Defendants re-sent their March 18 opening script on April 2, after Mr. Thomasson had replied and after Defendants had sent him five more messages. [***Exhibit A***, Nos. 3–8.] A person reading the conversation would not have sent it; an automated campaign would.

91. The system Defendants used to send their text messages has the capacity to use a random or sequential number generator to store or produce telephone numbers to be dialed, and Defendants used that capacity, including to determine the order in which stored numbers are texted.

92. The capacities and settings of Defendants' texting system are within Defendants' exclusive knowledge and control.

93. Each text message was sent to encourage Mr. Thomasson to purchase Defendants' tree-trimming services and is "telemarketing" and an "advertisement" within the meaning of 47 C.F.R. § 64.1200(f)(1) and (13).

94. Because Defendants' text messages were autodialed telemarketing, Defendants could not lawfully send them without Mr. Thomasson's prior express written consent. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(2).

95. "Prior express written consent" is specifically defined by regulation as:

> [A]n agreement, in writing, bearing the signature of the person called **that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or <u>prerecorded voice</u>**, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered.

47 C.F.R. § 64.1200(f)(9) (emphasis added).

96. Defendants never obtained Mr. Thomasson's prior express written consent to send him telemarketing text messages.

97. Defendants did not have Mr. Thomasson's prior consent of any kind before they began texting him on March 18, 2026, or before they resumed texting him from new numbers on July 9, 2026.

98. The Defendants knowingly sent Plaintiff text messages without his prior express written consent and, in doing so, invaded his personal privacy.

99. Defendants' text messages to Plaintiff were not for emergency purposes.

100. Eleven of Defendants' twenty-four text messages exceeded 160 characters and were transmitted as multiple concatenated SMS segments of up to 153 characters each. [***Exhibit A***, Nos. 1, 3–6, 8, 10, 12, 14, 18, 26.]

101. Under the GSM-7 character-encoding standard governing SMS transmission, a text message of up to 160 characters is transmitted as a single SMS message, whereas a message exceeding 160 characters is transmitted as multiple concatenated SMS segments of up to 153 characters each. Each such segment is separately transmitted to, and delivered on, the recipient's cellular device, even though the recipient's device may reassemble and display the segments as a single continuous message.

102. The number of characters in, and number of SMS segments comprising, each text message Defendants sent Mr. Thomasson is as follows, and set forth in ***Exhibit A***:

| No. | Date | Time | Sending No. | Protocol | Characters | Segments |
|---|---|---|---|---|---|---|
| 1 | 3/18/26 | 1:05 PM | (866) 567-4896 | SMS | 381 | 3 |
| 2 | 3/18/26 | 5:05 PM | (866) 567-4896 | SMS | 74 | 1 |
| 3 | 3/20/26 | 3:36 PM | (866) 567-4896 | SMS | 738 | 5 |
| 4 | 3/22/26 | 3:11 PM | (866) 567-4896 | SMS | 735 | 5 |
| 5 | 3/23/26 | 3:47 PM | (866) 567-4896 | SMS | 787 | 6 |
| 6 | 3/30/26 | 11:21 AM | (866) 567-4896 | SMS | 221 | 2 |
| 7 | 3/31/26 | 2:09 PM | (866) 567-4896 | SMS | 93 | 1 |
| 8 | 4/2/26 | 4:13 PM | (866) 567-4896 | SMS | 381 | 3 |
| 9 | 4/4/26 | 4:59 PM | (866) 567-4896 | SMS | 74 | 1 |
| 10 | 4/6/26 | 12:14 PM | (866) 567-4896 | SMS | 234 | 2 |
| 11 | 4/6/26 | 2:20 PM | (866) 567-4896 | SMS | 77 | 1 |
| 12 | 4/6/26 | 2:45 PM | (779) 774-7993 | SMS | 373 | 3 |
| 13 | 4/6/26 | 2:46 PM | (866) 567-4896 | SMS | 149 | 1 |
| 14 | 4/6/26 | 2:51 PM | (779) 774-7993 | SMS | 373 | 3 |
| 15 | 4/7/26 | 9:58 AM | (866) 567-4896 | SMS | 83 | 1 |
| 16 | 4/7/26 | 4:30 PM | (210) 329-3581 | -Voice- | — | — |
| 17 | 4/8/26 | 9:44 AM | (866) 567-4896 | SMS | 157 | 1 |
| 18 | 4/8/26 | 9:44 AM | (779) 774-7993 | SMS | 373 | 3 |
| 19 | 4/8/26 | 3:09 PM | (210) 329-3581 | -Voice- | — | — |
| 20 | 7/9/26 | 1:50 PM | (832) 780-5085 | SMS | 130 | 1 |
| 21 | 7/9/26 | 5:51 PM | (832) 780-5085 | SMS | 112 | 1 |
| 22 | 8/10/26 | 11:50 AM | (832) 780-5085 | SMS | 129 | 1 |
| 23 | 8/10/26 | 3:52 PM | (832) 780-5085 | SMS | 106 | 1 |
| 24 | 9/11/26 | 9:00 AM | (832) 862-4503 | SMS | 125 | 1 |
| 25 | 9/11/26 | 1:33 PM | (832) 862-4503 | SMS | 106 | 1 |
| 26 | 9/11/26 | 2:16 PM | (832) 780-5085 | SMS | 286 | 2 |
| | | | **TEXT TOTAL** | **24** | — | **50** |
| | | | **TOTAL (texts + calls)** | **26** | — | |

103. In total, the twenty-four text messages Defendants sent Mr. Thomasson were transmitted as fifty (50) separate SMS segments.

104. Mr. Thomasson's cellular carrier records independently reflect each of Defendants' text messages was received as multiple separate SMS segments, consistent

with the character counts and segment counts set forth above, and reflecting his receipt of fifty (50) separate SMS segments in total.

105. Each SMS segment Defendants transmitted to Mr. Thomasson was separately transmitted and delivered and constitutes a separate "call" and a separate "text message" within the meaning of the TCPA and its implementing regulations. *See, e.g., Connor*, 2025 U.S. Dist. LEXIS 199578, at *2–*4.

106. Defendants caused Mr. Thomasson actual harm and cognizable legal injury including, *inter alia*, aggravation, nuisance, invasions of privacy, and the time he spent receiving, reviewing, and responding to Defendants' text messages and voicemails.

107. Thomasson is a "person" as defined by 47 U.S.C. § 153(39).

108. Thomasson is a "person" as defined by Tex. Bus. & Com. Code § 1.201(b)(27).

109. Spencer is a "person" within the meaning of 47 U.S.C. § 153(39).

110. Spencer is a "telemarketer" within the meaning of 47 C.F.R. § 64.1200(f)(12).

111. AGTS is a "seller" within the meaning of 47 C.F.R. § 64.1200(f)(10) and a "seller" within the meaning of Tex. Bus. & Com. Code § 302.001.

112. Spencer directed and participated in the telemarketing alleged here. He personally placed the April 7 and April 8 calls, and as AGTS's sole Managing Member he controlled the marketing practices AGTS used. He is personally liable for those violations. *See Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 898 (W.D. Tex. 2001).

113. Defendants' text messages to Mr. Thomasson's cellular telephone, as shown on ***Exhibit A***, constitute "telemarketing" within the meaning of 47 C.F.R. § 64.1200(f)(13).

114. Defendants' text messages and calls to Mr. Thomasson's cellular telephone constitute "telephone solicitations" within the meaning of 47 U.S.C. § 227(a)(4) and 47 C.F.R. § 64.1200(f)(15) because Defendants initiated them to encourage him to purchase their tree-trimming services.

115. The Defendants neither maintained nor enforced any internal do-not-call policy; alternatively, if a policy existed, they failed to comply with the minimum requirements of 47 C.F.R. § 64.1200(d) and/or were never properly implemented.

116. Neither AGTS nor Spencer held a registration certificate under Chapter 302 of the Texas Business and Commerce Code for any business location from which Defendants made their telephone solicitations to Mr. Thomasson.

117. Defendants' violations were knowing and willful. For six months, Defendants texted and called a number registered on the National Do Not Call Registry, from five different numbers, usually without naming the seller and without the written consent the law requires.

118. Mr. Thomasson is therefore entitled to recover actual, statutory, and treble damages; civil penalties; a permanent injunction against Defendants' future telemarketing violations; and his reasonable and necessary attorneys' fees and costs.

## V. COUNT ONE: VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(b)
### *(Against All Defendants)*

119. The preceding Factual Allegations are incorporated by reference.

120. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 C.F.R. § 64.1200(a)(2) by sending twenty-four telemarketing text messages to Mr. Thomasson's cellular telephone number using an ATDS without his prior express written consent. [***Exhibit A***, Nos. 1–15, 17–18, 20–26.]

121. Count One is limited to Defendants' text messages. Plaintiff does not allege that Defendants' April 7 and April 8 calls were placed using an ATDS or an artificial or prerecorded voice.

122. Mr. Thomasson's replies did not supply prior express written consent. None was a signed written agreement containing the disclosures 47 C.F.R. § 64.1200(f)(9) requires, and each came after Defendants had begun texting him.

123. The Defendants' TCPA violations were negligent and/or willful.

124. Mr. Thomasson is entitled to an award of $500 in statutory damages under 47 U.S.C. § 227(b)(3)(B) for each violation.

125. Because Defendants' violations were willful or knowing, the Court may increase the award to not more than $1,500 for each violation. 47 U.S.C. § 227(b)(3).

126. For purposes of statutory damages available under 47 U.S.C. § 227(b)(3), each SMS segment Defendants transmitted to Mr. Thomasson constitutes a separate "call."

127. Defendants' twenty-four text messages were transmitted as fifty (50) SMS segments and therefore constitute fifty (50) violations of § 227(b). Alternatively, each of the twenty-four text messages constitutes a separate violation.

## VI. COUNT TWO: VIOLATIONS OF THE TCPA'S DO-NOT-CALL PROVISIONS, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c)(2) AND (d)

***(Against All Defendants)***

128. The preceding Factual Allegations are incorporated by reference.

129. Defendants violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2) by initiating more than one telephone solicitation within a 12-month period—twenty-four text messages and two telephone calls—to Mr. Thomasson's cellular telephone number, which has been registered on the National Do Not Call Registry since 2012.

130. Mr. Thomasson's cellular telephone number is a residential number for purposes of these rules. 47 C.F.R. § 64.1200(e).

131. Defendants separately violated 47 C.F.R. § 64.1200(d)(4) by initiating nineteen telemarketing text messages that did not identify the seller on whose behalf they were sent. [***Exhibit A***, Nos. 1–11, 13, 15, 17, 21, 23–26.]

132. Defendants' TCPA violations were negligent and/or willful.

133. Mr. Thomasson is entitled to an award of $500 in statutory damages under 47 U.S.C. § 227(c)(5)(B) for each violation.

134. Because Defendants' violations were willful or knowing, the Court may increase the award to not more than $1,500 for each violation. 47 U.S.C. § 227(c)(5).

135. Each SMS segment Defendants transmitted while Mr. Thomasson's number was registered on the National Do Not Call Registry constitutes a separate "text message" for purposes of 47 U.S.C. § 227(c)(5).

136. Defendants' twenty-four text messages, transmitted as fifty (50) SMS segments, and their two calls therefore constitute fifty-two (52) violations of § 227(c) and 47 C.F.R. § 64.1200(c)(2). *See, e.g.*, *Connor*, 2025 U.S. Dist. LEXIS 199578, at *2–*4. Alternatively, Defendants' twenty-six communications constitute twenty-six (26) violations.

137. Defendants' nineteen text messages that failed to identify the seller constitute nineteen (19) additional violations of 47 C.F.R. § 64.1200(d)(4), actionable under 47 U.S.C. § 227(c)(5).

## VII. <u>COUNT THREE:</u> VIOLATIONS OF TEX. BUS. & COM. CODE § 305.053

***(Against All Defendants)***

138. The preceding Factual Allegations are incorporated by reference.

139. Mr. Thomasson received communications from Defendants that violated 47 U.S.C. § 227 and its implementing regulations, as alleged in Counts One and Two; thus, he is entitled to:

139.1. a permanent injunction enjoining Defendants' further violations, Tex. Bus. & Com. Code § 305.053(a)(1);

139.2. the greater of $500 for each violation or Plaintiff's actual damages, *id.* § 305.053(b); and

139.3. for each violation Defendants committed knowingly or intentionally, the greater of $1,500 or three times Plaintiff's actual damages, *id.* § 305.053(c).

140. Each SMS segment and each call that violated the TCPA is a separate "violation" within the meaning of Tex. Bus. & Com. Code § 305.053, such that Defendants committed fifty-two (52) violations of § 305.053. Alternatively, Defendants' twenty-six communications constitute twenty-six (26) violations.

## VIII. <u>COUNT FOUR:</u> VIOLATIONS OF TEX. BUS. & COM. CODE § 302.101

***(Against All Defendants)***

141. The preceding Factual Allegations are incorporated by reference.

142. AGTS is a "seller," and each of Defendants' text messages and calls was a "telephone solicitation," within the meaning of Tex. Bus. & Com. Code § 302.001, which defines a telephone solicitation to include "a transmission of a text or graphic message." *Id.* § 302.001(7).

143. Defendants violated Tex. Bus. & Com. Code § 302.101(a) by making telephone solicitations to Mr. Thomasson, a purchaser located in Texas, without holding a registration certificate for the business location from which they made them.

144. Spencer, who personally made the April 7 and April 8 solicitations and directed the others, acted as a salesperson for an unregistered seller. *See id.* § 302.252.

145. No exemption under Subchapter B of Chapter 302 applies to Defendants, who bear the burden of proving any exemption they claim. *Id.* § 302.051(a).

146. Each SMS segment and each call is a separate telephone solicitation and a separate violation, such that Defendants committed fifty-two (52) violations of Chapter 302. Alternatively, Defendants' twenty-six communications constitute twenty-six (26) violations.

147. Mr. Thomasson is entitled to a civil penalty of up to $5,000 for each violation. Tex. Bus. & Com. Code § 302.302(a); *Tatum*, 2026 U.S. Dist. LEXIS 39386, at *4–*5; *Callier*, 2026 U.S. Dist. LEXIS 178236, at *14. He may also enforce Chapter 302 through the DTPA's remedies, as alleged in Count Five. Tex. Bus. & Com. Code § 302.303(b).

## IX. <u>COUNT FIVE:</u> VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT THROUGH TEX. BUS. & COM. CODE §§ 302.303 AND 305.054

***(Against All Defendants)***

148. The preceding Factual Allegations are incorporated by reference.

149. Each violation of Chapter 302 alleged in Count Four is a false, misleading, or deceptive act or practice under Subchapter E of Chapter 17, and Mr. Thomasson may use the DTPA's private remedies to enforce Chapter 302. Tex. Bus. & Com. Code § 302.303(a)–(b).

150. Each violation of Chapter 305 alleged in Count Three is likewise a false, misleading, or deceptive act or practice under Subchapter E of Chapter 17, enforceable through the DTPA's private remedies. *Id.* § 305.054(a)–(b).

151. Section 305.054 applies to all the conduct alleged here, which occurred after its September 1, 2025 effective date. Acts 2025, 89th Leg., R.S., ch. 964 (S.B. 140), §§ 6–7.

152. Defendants committed those acts in "trade" and "commerce" by advertising and offering tree-trimming services. Tex. Bus. & Com. Code § 17.45(6).

153. Because Chapters 302 and 305 grant Mr. Thomasson the right to sue under the DTPA, he "is not limited to recovery of economic damages only, but may recover any actual damages incurred," without regard to whether Defendants acted intentionally. *Id.* § 17.50(h).

154. Defendants' deceptive acts were a producing cause of Mr. Thomasson's actual damages, including the invasion of his privacy, aggravation, nuisance, and time he spent receiving, reviewing, and responding to Defendants' messages and voicemails.

155. Defendants acted knowingly. They solicited Mr. Thomasson for six months, from five numbers, without the registration certificate Chapter 302 requires and without the written consent the TCPA requires.

156. Mr. Thomasson is therefore entitled to:

156.1. his actual damages, Tex. Bus. & Com. Code § 17.50(b)(1), (h);

156.2. for Defendants' knowing conduct, mental-anguish damages and up to three times his actual damages, *id.*;

156.3. an order enjoining Defendants' deceptive acts and practices, *id.* § 17.50(b)(2); and

156.4. court costs and reasonable and necessary attorneys' fees, *id.* § 17.50(d).

## X. PRAYER FOR RELIEF.

157. WHEREFORE, Plaintiff respectfully requests the Court enter judgment in his favor and against the Defendants, jointly and severally, as follows:

157.1. Finding Defendants' conduct and actions, as complained of in this lawsuit, violated 47 U.S.C. § 227(b) and (c) and 47 C.F.R. § 64.1200(a)(2), (c)(2), and (d)(4);

157.2. Finding Defendants' conduct and actions, as complained of in this lawsuit, violated Tex. Bus. & Com. Code §§ 302.101 and 305.053 and constituted false, misleading, or deceptive acts or practices under Tex. Bus. & Com. Code §§ 302.303 and 305.054;

157.3. Awarding injunctive and other equitable relief as necessary to protect Mr. Thomasson from Defendants engaging in future abuse and unlawful conduct as complained of in this lawsuit;

157.4. Awarding statutory damages on each cause of action under 47 U.S.C. § 227(b)(3) and (c)(5) and Tex. Bus. & Com. Code § 305.053;

157.5. Awarding treble damages for Defendants' willful, knowing, or intentional violations;

157.6. Awarding civil penalties of up to $5,000 for each violation of Chapter 302 under Tex. Bus. & Com. Code § 302.302(a);

157.7. Awarding actual damages, including mental-anguish damages, and up to three times those damages under Tex. Bus. & Com. Code § 17.50(b)(1) and (h);

157.8. Awarding Pre- and Post-Judgment interest;

157.9. Awarding court costs and reasonable and necessary attorneys' fees under Tex. Bus. & Com. Code § 17.50(d); and

157.10. Such other and further relief the Court deems just and proper.

*****

Respectfully submitted,

*s/ Zachary Z. Zermay*

Date: November 25, 2026

Zachary Z. Zermay (SBN 24151597)
Francesca A. Di Troia (SBN 24097596)
KRW LAWYERS
19122 US Hwy 281 N, Suite 324
San Antonio, Texas 78258
Telephone: (210) 490-4357
Zach@KRWlawyers.com
Francesca@KRWlawyers.com

*Attorneys for Plaintiff, Andrew T. Thomasson*